**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RANDELL HUFF and BRITTANY GRIMSELEY, on behalf of themselves all others similarly situated, | **Case No.: 1:26-cv-00364-ALC** |
| Plaintiffs, | |
| v. | |
| BETTERMENT, | |
| Defendant. | |
| JARED MCELWEE, | **Case No.: 1:26-cv-00393** |
| Plaintiff, | |
| v. | |
| BETTERMENT, LLC, | |
| Defendant. | |
| SAMUEL TSOU, on behalf of himself and all others similarly situated, | **Case No.: 1:26-cv-00444** |
| Plaintiff, | |
| v. | |
| BETTERMENT, LLC and BETTERMENT HOLDINGS, INC., | |
| Defendants. | |

| | |
|---|---|
| SCOTT WEISCOPE, on behalf of himself all others similarly situated,<br><br>    Plaintiff,<br><br>BETTERMENT, LLC and BETTERMENT HOLDINGS, INC.,<br><br>    Defendants. | **Case No.: 1:26-cv-00448** |
| DAVE GOEHST, on behalf of himself all others similarly situated,<br><br>    Plaintiff,<br><br>BETTERMENT, LLC and BETTERMENT HOLDINGS, INC.,<br><br>    Defendants. | **Case No.: 1:26-cv-00500** |

## PLAINTIFFS' UNOPPOSED MOTION TO CONSOLIDATE ACTIONS AND APPOINT INTERIM CLASS COUNSEL AND INTERIM LIAISON COUNSEL[1]

Plaintiffs in the above-captioned actions ("Plaintiffs"), individually, and on behalf of all those similarly situated, respectfully request that the Court: (1) pursuant to Federal Rule of Civil Procedure 42(a), consolidate the above-styled actions into to the first-filed action, *Randell Huff and Brittany Grimseley, et al. v. Betterment* ("Huff"), as well as any other future actions filed or transferred related actions (collectively, the "Related Actions") against Defendant Betterment, LLC and Defendant Betterment Holdings, Inc. (collectively "Defendants") under the new case style: "*In re Betterment Data Breach Litigation*"; (2) appoint Plaintiffs' leadership structure

---

[1] Plaintiffs' counsel have not met and conferred with Defendant's counsel on this Motion, as Defendant's counsel has yet to enter an appearance in any of the Related Actions.

consisting of Mariya Weekes of Milberg, PLLC and M. Anderson Berry of Emery Reddy, PC as Interim Co-Lead Class Counsel ("Proposed Interim Co-Lead Class Counsel"), Israel David of Israel David LLC as Interim Liaison Counsel ("Proposed Interim Liaison Counsel"); (3) stay the Related Actions, including any of Defendants' responsive pleading deadlines; and (4) require the filing of a consolidated class action complaint ("Consolidated Complaint") within thirty (30) days of entry of an order consolidating the cases and appointing leadership.

As discussed below, consolidation is proper because each action: (i) is brought against the same Defendant(s); (ii) is based on the same alleged data incident (the "Data Breach"); (iii) asserts the same or overlapping allegations and claims for relief; and (iv) seeks to represent the same or overlapping putative classes. Given the common alleged factual background and claims asserted in each action, consolidation will streamline litigation and preserve judicial and party resources.

## I.     <u>INTRODUCTION</u>

Plaintiffs, Randell Huff and Brittany Grimseley, filed the first Class Action Complaint against Defendant on January 15, 2026, alleging unauthorized disclosure of personally identifiable information ("PII" or "Private Information") belonging to them and thousands of other individuals affected by the Data Breach. Thereafter, four additional Class Action Complaints were filed. Each of these Related Actions arise from the same Data Breach, allege the same operative facts, and assert substantially identical claims on behalf of overlapping putative classes, thus making consolidation into the first-filed *Huff* action, which has the lowest case number, appropriate.

## II.    <u>COMPLAINT ALLEGATIONS AND PROCEDURAL BACKGROUND</u>

### A.     **The Data Breach**

Defendant is a national fintech company founded in 2008 that provides financial advisory services and is based in New York. *See Huff,* ECF No. 1, at ¶¶ 1-3. On or around January 9, 2026, Defendant has stated that it was the victim of a Data Breach involving unauthorized access to

sensitive PII contained on its IT Network. *Id.*, ¶¶ 3-11. In response, Defendant launched an investigation to determine the nature and scope of the Data Breach. *Id.* Defendant's investigation is ongoing and has yet determined the exact details regarding the extent that an unauthorized third-party was able to gain access to its IT Network, and exfiltrate files containing Plaintiffs and Class Members names, Social Security numbers, addresses, and dates of birth. *Id.*, ¶¶ 1-11. On or around January 12, 2026, Defendant began sending written notice ("Notice") to individuals impacted by the Data Breach. *Id.*

### B. Consolidation of the Related Actions

The Related Actions before this Court are substantially the same and consolidation is appropriate. Each lawsuit arises from the same common set of alleged facts: the Data Breach. Due to each Plaintiffs' reliance on the same set of alleged facts, all Plaintiffs assert overlapping claims, on behalf of similarly defined classes, seeking similar relief. The Related Actions, the parties thereto, and the Court will be best served in a consolidated proceeding, which will preserve party and judicial resources.

## III. ARGUMENT AND AUTHORITIES

### A. Legal Standard for Consolidation

Federal Rule of Civil Procedure 42(a) provides:

> If actions before the court involve a common question of law *or* fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

(emphasis added). "Rule 42(a) provides district courts with broad authority to consolidate actions that 'involve a common question of law or fact.'" *Luera v. M/V Alberta*, 635 F.3d 181, 194 (5th Cir. 2011) (quoting Fed. R. Civ. P. 42(a)); *see also In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977) ("The trial court's managerial power is especially strong and flexible in matters of consolidation.").

"The purpose of consolidation is to permit trial convenience and economy in administration." *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d at 1014 (citation omitted). Accordingly, "district judges have been urged to make good use of Rule 42(a) in order to expedite the trial and eliminate unnecessary repetition and confusion." *Id.* at 1013 (citation, quotations, and alterations omitted); *see also St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. 1983) ("Consolidating actions in a district court is proper when the cases involve common questions of law and fact, and the district judge finds that it would avoid unnecessary costs or delay.").

The following factors are pertinent to the decision of whether to consolidate actions:

> (1) whether the actions are pending before the same court; (2) whether the actions involve a common party; (3) any risk of prejudice or confusion from consolidation; (4) the risk of inconsistent adjudications of common factual or legal questions if the matters are tried separately; (5) whether consolidation will reduce the time and cost of trying the cases separately; and (6) whether the cases are at the same stage of preparation for trial.

*Bayati v. GWG Holdings, Inc.*, No. 3:22-CV-0410-B, 2023 WL 5925880, at *2 (N.D. Tex. Sept. 12, 2023).

## B.    The Related Actions Should be Consolidated with *Huff*.

The Related Actions involve common questions of law and fact, and all relevant factors weigh in favor of consolidation, which will promote efficiency and uniformity without prejudicing any party.  The Court should therefore consolidate all Related Actions with the first-filed *Huff* action.

All Related Actions involve common factual and legal questions as they arise from the same occurrence: the Data Breach. Courts have recognized that consolidation is appropriate where multiple actions arise from the same data breach event. *See, e.g.*, *Lockhart v. El Centro Del Barrio*, No. SA-23-CV-01156-JKP, 2024 WL 303253, at *2 (W.D. Tex. Jan. 25, 2024) (finding

5

consolidation appropriate because "Plaintiffs are all patients of Defendant asserting causes of action based on the same data breach resulting from the same cyberattack"); *Kaplan v. 21st Century Oncology Holdings*, No. 2:16-cv-210, 2016 WL 9383330, at *2 (M.D. Fla. July 21, 2016) ("it is clear that common questions of law and fact permeate these cases [because] . . . all of the cases appear to arise from the same alleged" data privacy incident).

Because the Related Actions are filed in this District, the first factor guiding the Court's analysis weighs in favor of consolidation.  *See U.S. ex rel Frey v. Health Mgmt. Sys., Inc.*, No. 3:19-cv-1141-B, 2021 WL 9145414, at *2 (N.D. Tex. Mar. 15, 2021) (first factor satisfied when "the cases are pending in the same court"); *Zolezzi v. Celadon Trucking Servs., Inc*., No. CIV.A.H-08-3508, 2009 WL 736057, at *1 (S.D. Tex. Mar. 16, 2009) (first factor satisfied where both actions filed in same district and division).

The second factor is likewise satisfied because the Related Actions are against the same Defendant and seek to certify national classes of similarly situated individuals whose PII was allegedly compromised in the Data Breach.  *See Lockhart*, 2024 WL 303253, at *2 (fact that all cases filed on behalf of same class of data breach victims against same defendant supports consolidation); *Bayati*, 2023 WL 5925880, at *2 (consolidating actions filed on behalf of same proposed class against same defendant); *Arnold & Co., LLC v. David K. Young Consulting, LLC*, No. SA-13-CV-00146-DAE, 2013 WL 1411773, at *2 (W.D. Tex. Apr. 8, 2013) (ordering consolidation where "[b]oth cases involve essentially the same parties").

The third and fourth factors favor consolidation as well.  On one hand, trying the Related Actions separately would risk inconsistent findings and rulings in each case arising from the same Data Breach, brought on behalf of the same putative class of individuals allegedly affected, against the same Defendant.  *See Lockhart*, 2024 WL 303253, at *2 (finding that "[c]onsolidation will

ensure consistent rulings and promote judicial economy" where three cases asserted "causes of action based on the same data breach resulting from the same cyberattack"); *JFP Servs., L.L.C. v. Torans*, No. SA-17-CV-00210-FB, 2017 WL 9362704, at *2 (W.D. Tex. Dec. 21, 2017) ("In light of these common questions of law and fact, the Court finds there is a risk of inconsistent adjudication if the Court were to allow these cases to be tried separately before different judges[.]"). On the other hand, "[a]ny prejudice to the parties flowing from the consolidation would be minimal in comparison to these considerations." *Id.*; *see also Stoneeagle Servs., Inc. v. Gillman*, No. 3:11-CV-02408-P, 2014 WL 12577069, at *3 (N.D. Tex. Jan. 28, 2014) ("Given the substantial similarities among the facts and causes of action, the prospect of confusion incumbent on the fact finder will be nominal at best because these cases tell the same story[.]"); *Zolezzi*, 2009 WL 736057, at *2 ("[T]he court finds that the risk of prejudice or confusion if the cases are consolidated is minimal. This risk is, therefore, outweighed by the risk of inconsistent judgments should the cases be tried separately.").

Regarding the fifth factor, consolidating the Related Actions will certainly reduce the time and costs for all involved by eliminating the need for separate filings, discovery, settlement negotiations, hearings, and trials for the four cases arising from the same Data Breach, involving the same Defendant and putative classes, and presenting the same factual and legal issues. This factor thus weighs in favor of consolidation. *See Bayati*, 2023 WL 5925880, at *2 (where two actions "make nearly identical legal claims based on the same set of facts," and were "filed on behalf of the same proposed class," consolidation "would therefore promote judicial efficiency"); *Gate Guard Servs. L.P. v. Solis*, No. CIV.A. V-10-91, 2011 WL 2784447, at *15 (S.D. Tex. July 12, 2011) (ordering consolidation where "the same factual and legal issues exist in both cases and consolidating the actions would be more efficient than litigating the two cases separately").

Finally, because the Related Actions are at the same procedural stage—complaints are filed, but there have been no responsive pleadings, and no scheduling orders have been entered—the sixth factor favors consolidation. *See Doe (S.M.A.) v. Salesforce, Inc.*, No. 3:23-CV-1040-B, 2023 WL 4108845, at *2 (N.D. Tex. June 20, 2023) (granting consolidation where cases at the same pre-trial stage); *Arnold & Co.*, 2013 WL 1411773, at *2 (ordering consolidation where "the cases were filed less than one month apart, no dispositive motions have been filed in either case, and very little discovery has occurred"); *Gabriel v. OneWest Bank FSB*, No. CIV.A. H-11-3356, 2012 WL 1158732, at *1 (S.D. Tex. Apr. 5, 2012) (ordering consolidation where "[n]either case has been set on schedule yet, so the litigation is at the same stage in both"); *Zolezzi*, 2009 WL 736057, at *2 (ordering consolidation where "both actions are at the early stages of litigation").

Accordingly, because all factors weigh in favor of consolidation, consolidating the Related Actions "is not only appropriate, but would promote this Court's judicial efficiency and economy and would tend to avoid unnecessary costs or delay." *Mayfield*, 2003 WL 21250935, at *2. The Court should therefore consolidate the Related Actions into this first-filed *Archer* action.

### C.    Legal Standard for Appointment of Interim Co-Lead Class Counsel

Rule 23(g)(3) explicitly permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for Complex Litigation ("MCL") § 21.11 (4th ed. 2004).

When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Fed. R. Civ. P. 23(g)(1)(A). *See Kjessler v. Zaappaaz, Inc*., No. 4:17-CV-3064, 2018 WL 8755737, at *3 (S.D. Tex. Aug. 31, 2018) (citing *Buonasera v. Honest Co., Inc*., 318 F.R.D. 17, 18 (S.D.N.Y. 2016); *In re Mun. Derivatives Antitrust Litig*., 252 F.R.D. 184, 186 (S.D.N.Y. 2008).) Under the rule, a court appointing class counsel must evaluate whether the proposed counsel will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(2), (4). In doing so, a court must consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A), (2). A court, in its discretion, also may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

### i. *Appointment of Interim Co-Lead Class Counsel and Interim Liaison Counsel is Appropriate*

Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel satisfy all the requirements for appointment by the Court under Fed. R. Civ. P. 23(g)(3). The attorneys and their firms have successfully litigated numerous class actions involving privacy claims on behalf of tens of millions of consumers. Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel possess the necessary resources to prosecute this litigation, have the support of the vast majority of the Plaintiffs named in the Related Actions, are working together collectively already, and will continue to work in this fashion to manage this litigation effectively and efficiently. Because Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel have the case-management and complex-litigation skills, experience, knowledge of the relevant facts and legal issues, support

of most of the Plaintiffs and their counsel from the Related Actions, and the extensive resources needed to efficiently prosecute this action on behalf of putative class members, the Court should grant Plaintiffs' motion. Proposed Interim Co-Lead Class Counsel's and Interim Liaison Counsel's work, experience, knowledge, resources, and successful track record litigating consumer data breach cases demonstrate that they are superbly qualified to represent the Proposed Class's interests under the factors enumerated in Fed. R. Civ. P. 23.

> ### a.    *Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel Have Performed Substantial Work Investigating and Litigating the Claims to Date.*

One factor courts consider is the work and resources counsel expend investigating the claims being asserted when appointing lead counsel. *See, e.g., Adedipe v. U.S. Bank, Nat. Ass'n*, No. CIV. 13-2687 JNE/JJK, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing interim class counsel because they "devoted the more substantial effort towards pre-suit investigation and identification of claims"); *In re IndyMac ERISA Litig.*, No. CV0804579DDPVBKX, 2008 WL 11343122, at *2 (C.D. Cal. Oct. 7, 2008) (same).

Here, immediately after the public announcement of the Data Breach, Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel began investigating potential legal claims and remedies for the victims of the breach. Those investigations included, among other things:

- Investigating the facts surrounding the Data Breach;
- Interviewing numerous individuals injured by the Data Breach;
- Researching legal claims;
- Drafting initial pleadings; and
- Organizing Plaintiffs and their counsel and discussing consolidating the Related Actions for unified proceedings and preparing the consolidation and proposed leadership papers.

Given the scope of the Data Breach and the number of people potentially affected, Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel worked to quickly organize

and avoid any delay that could result from a leadership dispute to address the merits of the case as expeditiously as possible. Moreover, in the spirit of their prior and positive working relationship, assignments have been, and will continue to be, allocated fairly and in a manner that takes advantage of the strengths of each firm while eliminating any duplicity.

Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel will continue to operate as a cohesive, well-organized group. Going forward, and if appointed, Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel will establish a standardized protocol for managing and reporting time and expenses incurred to prosecute the case as efficiently as possible. *See, e.g.*, *In re Lenovo Adware Litig.*, No. 15-MD-02624, 2015 WL 10890657, at *1 (N.D. Cal. July 27, 2015) (noting that the establishment of a "reasonable, fair, and transparent" billing protocol is an important factor in selecting interim class counsel).

Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel under Fed. R. Civ. P. 23(g)(3), as Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel are organized, unified, and committed to working together for the best interests of the class. *Dependable Component Supply Corp. v. Murata Mfg. Co.*, No. 5:18-CV-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 2018) (selecting interim counsel based on the effort expended to investigate the claims and the resources available to prosecute the litigation).

> **b.      Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel Possess the Necessary Experience, Skill, and Knowledge of the Law to Prosecute this Litigation.**

A primary factor in selecting interim counsel is their experience, skill, knowledge, and familiarity with the relevant law. *See, e.g.*, *Buettgen v. Harless*, 2011 U.S. Dist. LEXIS 53888, at *27 (N.D. Tex. May 19, 2011) (appointing class counsel with substantial experience in class actions and demonstrated knowledge of the relevant law). Proposed Interim Co-Lead Class

Counsel and Interim Liaison Counsel have the experience and skill to prosecute this action efficiently and effectively. As set forth below, their résumés include extensive experience leading complex class actions, including data breach cases on behalf of millions of consumers. They will formulate and present positions on substantive and procedural issues during the litigation. *See* Manual for Complex Litigation § 10.221 ("Typically [lead counsel] act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met."). Courts have found that proposed leadership counsel's experience and service as lead counsel in prior cases is particularly persuasive. *See, e.g.*, *In re Lenovo Adware Litig.*, 2015 WL 10890657, at *2 (finding class-action and complex litigation leadership experience relevant for appointment).

As demonstrated below, Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel each have substantial data breach class-action experience, resources, and knowledge that will undoubtedly benefit the putative class as this litigation proceeds.

### 1. Proposed Interim Co-Lead Class Counsel

*Mariya Weekes of Milberg, PLLC*

Mariya Weekes is a partner at the international plaintiffs' class action firm Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"). Since Milberg's founding in 1965, it has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and

settlements.[2] Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court.[3] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing.  Milberg is recognized as having one of the most respected data privacy practice groups in the United States, having been ranked by Chambers and Partners as Band 3 for Privacy & Data Security Litigation (2024).  Law360 recently highlighted Milberg's work in the privacy space. Milberg has more than 100 attorneys on staff and has offices across the United States and the European Union.

Ms. Weekes is a former Florida State Circuit Court Judge, elected to the bench by her constituents. As a Florida Circuit Court Judge, she presided over thousands of complex cases, hundreds of trials, and motions. In her capacity as a Circuit Court Judge, she served on the Circuit's appellate panels reviewing appeals from the lower trial Courts and administrative agencies. Before ascending to the bench, she practiced as a trial lawyer representing individuals and corporations in complex cases throughout the State of Florida. As a practicing attorney, she has personally tried dozens of jury trials to verdict and has participated in many significant cases. Both as a civil trial lawyer and former prosecutor, she has handled complex cases from their inception through appeal.

After stepping down from the bench, Ms. Weekes joined Milberg's Cybersecurity and Data Privacy Group, which has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country. *See, e.g.*, *In Re: Hot Topic Data Breach Litigation*, No. 2:24-cv-9215-MEMF-AS (C.D. Cal.) (Ms. Weekes

---

[2] *See, e.g., In re Tyco International Ltd., Securities Litigation*, MDL 1335 (D.N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.

[3] *See* https://milberg.com/precedent-setting-decisions/page/3/.

appointed co-lead counsel in a consolidated action involving more than 57 million customers); *In Re: LoanCare Data Security Breach Litig.*, No. 3:23-cv-1508-MMH-MCR (M.D. Fla.) (where Ms. Weekes was appointed co-lead counsel in a consolidated action involving more than 1.3 million consumers); *In Re: Berry, Dunn, McNeil & Parker Data Security Incident Litigation.*, No. 2:24-cv-00146 (D. Maine) (Ms. Weekes was appointed to the executive committee in a consolidated action involving 1.1 million consumers); *Reichbart v. Financial Business and Consumer Solutions, Inc.*, No. 24-cv-1876 (E.D. Penn.) (Ms. Weekes was appointed chair of the Plaintiffs' Executive Committee in a consolidated action involving more than 1.9 million consumers); *Morrison et al. v. Family Dollar Stores, LLC, et al.*, 0:24-cv-60294-AHS (S.D.Fl.) (Ms. Weekes was appointed as co-lead counsel in a consolidated consumer protection class action involving adulterated mediations impacting thousands of consumers across 19 States); *In Re ConnectonCall.com Data Breach Litigation*, Case No. 2:24-cv-08790-SJB-JMW (E.D NY) (Ms. Weekes appointed Interim Co-Lead Counsel); *Zayatz v. Akumin Operating Corp.*, Case No. 0:24-cv-62439-RS (S.D. Fl) (Ms. Weekes appointed Interim Co-Lead Counsel); *Owings v. Medusind, Inc.*, 1:25-cv-20117-RAR (S.D. Fl) (Ms. Weekes appointed interim co-lead counsel); *W. v. LivaNova USA, Inc.,* Case No. 4:24-cv-02250 (S.D. Tex.) (Ms. Weekes was appointed Interim Co-Lead Counsel); *In re Coastal Orthopedics & Sports Medicine of Southwest Florida Data Breach Litig.,* Case No. 2024-CA-1078AX (12th Judic. Circ. Ct. of Fla., Manatee Cnty) (Ms. Weekes was appointed Interim Class Counsel); *Lomedico v. MarineMax, Inc.*, Case No. 8:24-cv-1784-MSS-AEP (M.D. Fla.) (appointed joint Interim Class Counsel); *In re TRC Staffing Services, Inc. Data Breach Litig.*, Case No. 1:24-cv-02398-VMC (N.D. Ga.) (Ms. Weekes was appointed co-lead counsel); *Lepore et al v. Affiliated Dermatologists & Dermatologic Surgeons, P.A.*, Case No. MRS-L-001091-24 (Ms. Weekes was appointed Interim Class Counsel); *Owens et al v. MGM Resorts International, et al.,* Case No.

2:23-cv-01480-RFB-MDC (D. Nev.) (Ms. Weekes was appointed to Plaintiffs' Steering Committee); *Mckinley v, Doxim, Inc*. Case No. 2:24-cv-11550-TGB-CI (E.D. Mich.) (Ms. Weekes was appointed co-lead counsel); *Cucuta v. FloridaCentral Credit Union,* Case No. 24-CA-006065 (Hillsborough County, Fl.) (Ms. Weekes was appointed co-lead counsel).; *In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Milberg was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers).[4] Milberg's Cybersecurity and Data Privacy Group is largely responsible for developing the favorable case law that many plaintiffs rely on in the data breach space. *See e.g., Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig*., 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *In re Blackbaud, Inc., Customer Data Breach Litig*., No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case).

Ms. Weekes firm resume is attached hereto as **Exhibit A**..

### *M. Anderson Berry of Emery Reddy, PC*

Mr. Berry is the head of the Complex Litigation and Privacy Rights Department, and a Partner at Emery Reddy, PC ("Emery Reddy"), with an extensive background in privacy and consumer/government fraud litigation. Before joining Emery Reddy, Mr. Berry spent eight years

---

[4] *See, also Morrill v. Lakeview Loan Servicing, LLC*, Case No. 1:22-cv-20955-DPG (S.D. Fla.) (where Milberg is appointed to the leadership committee in a data breach class action involving 6 million consumers); *Sherwood v. Horizon Actuarial Services, LLC*, Case No. 1:22-cv-01495-ELR (N.D. Ga.) (where Milberg is court-appointed co-lead counsel in a data breach class action involving 4 million consumers).

leading the Complex Litigation department at Clayeo C. Arnold, APC. Before then, Mr. Berry worked as an Assistant United States Attorney for the Eastern District of California. As part of the Affirmative Civil Enforcement unit, Mr. Berry handled a wide variety of complex cases, recovering millions of dollars for the United States. While working as an Assistant United States Attorney, Mr. Berry worked with diverse Federal and State agencies, including the Federal Bureau of Investigation and the California Attorney General's office. Before working for the Department of Justice, Mr. Berry practiced at Jones Day, one of the world's largest law firms, where he represented clients in international arbitration and complex commercial litigation, including defending against class action allegations.

Mr. Berry has handled more than one hundred class action cases across the country involving data breaches and other privacy matters, including the following active matters where he has a leadership position: *In re Laboratory Services Cooperative Data Breach Litig.*, Case No. 2:25-cv-00685-BJR (W.D. Wash.) (Plaintiffs' Steering Committee); *Swan v. North American Breaker Company, LLC*, Case No. 2:25-cv-02002-HDV-KES (C.D. Cal.) (co-lead counsel); *Margul v. Evolve Bank & Trust*, Case No. 1:24-cv-03259-DDD (D. Co.) (co-lead counsel); *Pace v. Omni Family Health*, Case No. 1:24-cv-01277-JLT (E.D. Cal.) (co-lead counsel); *In re Avis Rent A Car System, LLC Security Incident Litigation*, Case No. 2:24-cv-09243-JXN (D. N.J.) (co-lead counsel); *Kersey v. Therapeutic Health Services*, Case No. 24-2-17679-9 (Wash. Super., King Cty) (lead counsel); *Cordell v. Patelco Credit Union*, Case No. 24CV082095 (Sup. Crt. Of CA, Alameda) (co-lead counsel); *In re: Panera Data Security Litigation*, Case No. 4:24-cv-847-HEA (E.D. Mo.) (co-lead counsel); *Burgin et al. v. Housing Authority of the City of Los Angeles*, No. 23STCV06494 (Super. Ct. of CA, Los Angeles) (Co-Lead Counsel); *In re: Signature Performance Data Breach Litig.*, No. 8:24-cv-00230-BBCB-MDN (D. Neb.)(Co-Lead Counsel); *In Re: Eureka*

*Casino Breach Litig.*, No. 2:23-cv-00276-CDS-DJA (D. Nev.) (Co-Lead Counsel); *In re: Sequoia Benefits and Insurance Data Breach Litig.*, No. 3:22-cv-08217-RFL (N.D. Cal.) (Executive Comm.); *Smith v. Apria Healthcare*, LLC, No. 1:23-cv-01003-JPH-KMB (S.D. Ind.) (Executive Comm.); *In Re: Proliance Surgeons Data Breach Litig.*, No. 23-2-23579-7 SEA (Wash Super., King) (Executive Comm.); *In re Lakeview Loan Servicing Data Breach Litigation*, Case No. 1:22-cv-20955-DPG (S.D. Fla.) (Executive Comm.); *In re Landmark Admin LLC Data Incident Litigation*, Case No. 6:24-cv-082-H (N.D. Tx.) (Executive Comm.); Garcia v. Set Forth, Inc., Case No. 24-CV-11688 (N.D. Ill.) (Executive Comm.); *In Re Powerschool Holdings, Inc. and Powerschool Group, LLC Customer Security Breach Litig.*, Case No. 25-md-3149-BEN-MSB (S.D. Cal.) (Executive Comm.). Mr. Berry's resume is included as part of the Emery Reddy, PC Firm Resume attached as **Exhibit B**.

### 2. Proposed Interim Liaison Counsel

#### *Israel David of Israel David, LLC*

Israel David LLC is a diverse and growing litigation boutique formed in 2022 by Israel David. Immediately prior to forming the firm, Mr. David spent 26 years in the Litigation Department of the elite international law firm Fried, Frank, Harris, Shriver & Jacobson LLP, including 17 years as a prominent partner at that firm. Mr. David has earned a national reputation for successfully leading and co-leading the representation of prominent defendants in some of the most high-profile securities and shareholder class action lawsuits nationwide in the last quarter century. Among numerous other class action lawsuits, these include:

- Leading the representation of the President of Lehman Brothers in numerous lawsuits nationwide – including the consolidated class action securities litigation in the Southern District of New York – arising out of the collapse of Lehman Brothers, likely the largest corporate financial collapse in U.S. history.

- Co-leading the representation of Wells Fargo & Company, its predecessor Wachovia

Corporation, and Wachovia's senior-most officers and directors in the consolidated class action securities litigation in the Southern District of New York arising out of the financial collapse of Wachovia. The lawsuit (with alleged losses of approximately $109 billion) ione of the largest class action securities fraud lawsuits in U.S. history to have obtained a complete dismissal.

- Co-leading the representation of all the underwriters of the General Motors Company 2010 IPO – the then-largest IPO in U.S. history – in a class action securities litigation in the Southern District of New York.

- Co-leading the representation of eight globally leading banks in a class action securities litigation in the Southern District of New York involving the issuance of approximately $26 billion of Residential Mortgage-Backed Securities.

More recently, federal courts from California to New York have appointed Mr. David to leadership positions in high-profile data privacy and antitrust class action lawsuits, including:

- In January 2023, the Honorable Judge Ann M. Donnelly of the Eastern District of New York appointed Israel David as Interim Co-Lead Class Counsel in the high-profile antitrust class action lawsuit challenging the so-called Northeast Alliance entered into by American Airlines and JetBlue Airlines. *In re American Airlines/JetBlue Antitrust Litigation* (22-cv-07374-AMD-TAM).

- In July 2023, the Honorable Judge Kandis A. Westmore of the Northern District of California appointed Israel David as Interim Co-Lead Class Counsel in a data privacy class action lawsuit involving a data breach that compromised the private data of over 200 million Twitter users. *Gerber v. Twitter, Inc.* (23-cv-00186-KAW).

- In July 2023, the Honorable Judge Katherine Polk Failla of the Southern District of New York appointed Israel David as Interim Lead Class Counsel in a data privacy class action lawsuit involving a data security incident at The Metropolitan Opera in New York City. *Tuteur v. Metropolitan Opera Association, Inc.* (23-cv-03997-GS).

- In March 2024, the Honorable Judge Rebecca R. Pallmeyer of the Northern District of Illinois appointed Israel David to the Plaintiffs' Steering Committee in a data privacy class action lawsuit arising out of allegations that TikTok illicitly pied on users of the TikTok app whilst using the app's in-app web browser. *In re TikTok Consumer Privacy Litigation* (Case No. MDL 2948-A).

- In June 2024, the Honorable Judge Rachel P. Kovner of the Eastern District of New York appointed Israel David as Liaison Counsel in a multidistrict class action lawsuit involving a data breach that compromised private health information of 13 million victims. *In r Perry Johnson & Associates Medical Transcription Data Security Breach Litigation* (Case No. 1:24-md-3096-RPK-LGD).

Other Israel David LLC attorneys add a wealth of experience and diversity to the team, including a former equity partner at Ropes & Gray LLP, a former Counsel at Ropes & Gray LLP, a former Special Counsel at Weil, Gotshal & Manges LLP, a former Assistant District Attorney with the Manhattan District Attorney's Office, and former judicial clerks with the United States Court of Appeals for the Second Circuit and Sixth Circuit, respectively, and with the United States District Court for the Southern District of New York, among other litigation attorneys. Mr. David's experience and knowledge are further demonstrated in Israel David's firm resume, attached hereto as **Exhibit C**.

c.    *Additional Factors Supporting Formal Designation of Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel*

Plaintiffs' support for the proposed leadership structure also weighs in favor of appointing Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel. Notably, the proposed leadership structure has the support of the named Plaintiffs and firms from all but one of the Related Actions.[5] *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel."); *see also In re Wendy's Co. S'holder Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394 at *2 (S.D. Ohio Dec. 17, 2018) (quoting *Kubiak v. Barbas*, No. 3:11-cv-141, 2011 WL 2443715, at *2 (S.D. Ohio June 14, 2011) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an 'essential attribute' for lead counsel.")); *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 U.S. Dist. LEXIS 164895, at *10 (N.D. Ill. May 30, 2020) ("And all Plaintiffs in this action have

---

[5] Proposed Interim Co-Lead Class Counsel attempted to contact counsel for *Jared McElwee v. Betterment, LLC*, Case No. 1:26-cv-00393, by email and telephone on January 20 and 21, 2026, but did not hear back from the attorneys at the Cohen Law Group by close of business on January 21, 2026. Proposed Interim Co-Lead Class Counsel attempted to contact local counsel for the Cohen Law Group, which is based in Florida, but were unable to identify local counsel.

consented to the proposed leadership structure."); Manual for Complex Litigation §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach). Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel seek this leadership structure to best serve the interests of the classes in the most efficient manner possible.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the Court, all of which are critical to the successful management of the litigation. *See* Manual for Complex Litigation § 10.21.  One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id*. It is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." Duke Guidelines, *supra*, at 43. Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel have been appointed to leadership positions together in numerous other class actions cases. Selecting lawyers who have previously worked together has many benefits. They have developed working relationships, know of complementary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id*. Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel are well suited to jointly prosecute this action because they are able to work cooperatively and inclusively with themselves and other counsel.

Importantly, Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel have

not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. They understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party litigation funding to do so.

While Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. Accordingly, they have already discussed how best to organize to effectively use their members' diverse skills and unique experiences for the efficient prosecution and management of this litigation while avoiding unnecessary and duplicative billing.

Finally, this Court should appoint Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel because their firms collectively filed all pending actions against Defendant.

Accordingly, Proposed Interim Co-Lead Class Counsel's and Interim Liaison Counsel's work, experience, knowledge, resources, and successful track record litigating consumer data breach cases demonstrate that they are superbly qualified to represent the proposed classes interests under the factors enumerated in Fed. R. Civ. P. 23, and Plaintiffs' motion should be granted.

## IV.    **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request the Court grant this Motion and enter an order: (1) consolidating the Related Actions and future actions into the first filed action, under the new case style: "*In re Betterment Data Breach Litigation*"; (2) appointing Ms. Weekes and Mr. Berry as Interim Co-Lead Counsel, and Mr. David of Israel David, LLC as Interim Liaison Counsel; (3) staying the Related Actions, including the Defendant's responsive pleading deadlines, and (4) setting a deadline for the filing of a single Consolidated Complaint thirty (30) days after the court's order consolidating the cases and appointing leadership.

DATED: January 23, 2026                  Respectfully submitted,

                                         /s/  *Mark K. Svensson*
                                         _____

21

Mark K. Svensson (NY Bar No: 5974290)
**MILBERG, PLLC**
405 East 50th Street, Suite 408
New York, New York 10022
Tel.: (202) 975-0468
msvensson@milberg.com

Mariya Weekes (FBN 56299)
**MILBERG, PLLC**
333 SE 2nd Avenue, Suite 2000
Miami, FL 33131
Tel: (866) 252-0878
mweekes@milberg.com

M. Anerson Berry, Esq. (*pro hac vice* forthcoming)
Gregory Haroutunian (NY Bar No: 5187430)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, Washington 98101
Telephone: (916) 823-6955
anderson@emeryreddy.com
gregory@emeryreddy.com

*Proposed Interim Co-Lead Class Counsel*

Israel David
**ISRAEL DAVID LLC**
60 Broad Street, Suite 2900
New York, New York 10004
Telephone: (212) 350-8850
israel.david@davidllc.com

*Proposed Interim Liaison Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served upon all counsel of record for each party in the above-captioned actions sought to be consolidated via electronic mail on this the 23rd day of January 2026.

/s/ *Mark K. Svensson*
Mark K. Svensson